UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LADON D. MOORE,

                    Plaintiff,                              Case No. 1:26-cv-328

v.                                                          Honorable Jane M. Beckering

UNKNOWN HUDSON et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2); however, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.    The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule

---

corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See* Op. & J., *Moore v. Kamardt et al.*, No. 1:23-cv-1213 (W.D. Mich. Jan. 2, 2025), (ECF Nos. 24, 25); Op. & J., *Moore v. Johnson et al.*, No. 1:23-cv-1220 (W.D. Mich. Feb. 27, 2024), (ECF Nos. 21, 23); Op. & J., *Moore v. Unknown Part(y)(ies) #1*, No. 1:23-cv-294 (W.D. Mich. June 1, 2023), (ECF Nos. 12, 14); Op. & J., *Moore v. Johnson et al.*, No. 1:22-cv-872 (W.D. Mich. Feb. 14, 2023), (ECF Nos. 26, 28). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996, and all of the dismissals constitute "strikes" under the standard articulated by the Sixth Circuit in *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024). *See also Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007).

As explained below, in this action, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that

the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is currently incarcerated at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan, and the events about which he complains occurred at that facility. (*See* Compl., ECF No. 1, PageID.4.) Plaintiff sues the following ICF officials: Correctional Officer Unknown Hudson, Correctional Officer Unknown Rodriguez, Correctional Officer Unknown Smith, Correctional Officer Unknown Darnell, Correctional Officer Unknown Hernandez, "Correctional Officers Unknown *et al*., (to be discovered),"[2] "MDOC-Director," and "Office of Legal Affairs Director (MDOC)." (*Id*., PageID.4–5.)

In Plaintiff's complaint, he alleges that since January 6, 2026, he has been subjected to "inhumane treatment."[3] (Compl., ECF No. 1, PageID.6.) Specifically, Plaintiff alleges that while he was in "1-35" segregation, he woke up at 2:30 a.m. and his "throat was on fire," he was coughing, and he vomited. (*Id*.) Additionally, Plaintiff's eyes were bloodshot, red, and "burn[ed]

---

[2] In Plaintiff's complaint, the names for Defendants # 7, 8, and 11 are blank. The Court construes the Defendant that Plaintiff identifies as "Correctional Officers Unknown *et al*., (to be discovered)" to include these unidentified Defendants. (Compl., ECF No. 1, PageID.4, 5.)

[3] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

intensely," he had a migraine headache, and his skin itched and burned. (*Id*.) Plaintiff alleges that these were symptoms of "being gased (sic) or exposed to some type of dangerous chemicals," and that these symptoms lasted for hours. (*Id*.) Plaintiff claims that the "primary source for the incident" was an unidentified correctional officer who was "suddenly not seen for weeks." (*Id*.)

Subsequently, Plaintiff was moved to "1-10" segregation. (*Id*.) While there, Defendant "Hudson, *et al*." would remove "large portions" from Plaintiff's meals and add "some type of chemical additives[.]"[4] (*Id*.) Plaintiff claims that these chemicals caused a number of issues with Plaintiff's hands, including: skin abrasions on his knuckles, "arid palms and fingertips," grooves in his skin that were dry, cracked, and swollen, discoloration on the back of his hands, "crusty-pale, web-cobbings" on his hand and wrist, and itchiness. (*Id*.) Plaintiff also alleges that the chemicals added to his food caused the muscles in his chest to squeeze his heart, pulsate, and "throb violently," causing intense pain. (*Id*., PageID.8.) Plaintiff also experienced throbbing in his neck, back, left forearm, and bicep areas, as well as "spasmatic conditions" and sudden dizziness. (*Id*.) Plaintiff also vomited, had severe cramping, migraines, and his stomach "blows-up like a beach ball." (*Id*.) Furthermore, Plaintiff contends that these "atrocities" lessened the effectiveness of the medication that he takes for pancreatitis. (*Id*.)

Plaintiff "told [Defendant] Hudson and [nonparty Sergeant] Rosenburger about what [Defendant] Hudson, *et al*. [were] doing." (*Id*.) Plaintiff also submitted a "body warn camera complaint" and filed a grievance. (*Id*.)

---

[4] Although the Court does not take this into consideration when determining whether Plaintiff has alleged sufficient facts to show an imminent risk of serious injury in this action, the Court notes that Plaintiff has made similar allegations that MDOC staff poisoned his food in two of his previous cases. Op., *Moore v. Kamardt et al.*, No. 1:23-cv-1213 (W.D. Mich. Jan. 2, 2025), (ECF No. 24, PageID.124); Op., *Moore v. Johnson et al.*, No. 1:22-cv-872 (W.D. Mich. Feb. 14, 2023), (ECF No. 26, PageID.140).

Although the Court does not minimize Plaintiff's experience, as explained below, the Court concludes that Plaintiff has failed to allege any facts which support a finding that he was in imminent danger at the time he filed this lawsuit. First, Plaintiff alleges that while in his cell he was "gased (sic) or exposed to some type of dangerous chemicals" which caused a range of medical conditions. (*Id*., PageID.6.) Plaintiff alleges that an unidentified correctional officer was the "primary source for the incident." (*Id*.) These allegations fail to show that any of the *named Defendants* were involved in, or had any knowledge of, this alleged incident at plaintiff's cell. *Cf. Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." (citation omitted)).

Furthermore, although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory

construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to § 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson v. U.S. Dep't of Just.*, 964 F.3d 65, 71 (D.C.

7

Cir. 2020). Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Here, regarding the alleged incident that occurred in Plaintiff's cell, Plaintiff has failed to allege facts to show the requisite nexus between any alleged present danger and the named Defendants in this action. Accordingly, these allegations fail to invoke the imminent danger exception to the three-strikes rule. See 28 U.S.C. § 1915(g).

Plaintiff also alleges that Defendant "Hudson, *et al.*" have been putting chemicals in Plaintiff's food that have caused a host of adverse reactions. (Compl., ECF No. 1, PageID.6, 8.) These allegations are also insufficient to invoke the exception to the three-strikes rule. Plaintiff provides detailed allegations about the symptoms that he has experienced as a result of the alleged tampering with his food. (*Id.*) But regarding the alleged food tampering, Plaintiff only claims that after he was moved to "1-10" segregation, Defendant "Hudson, *et al.*" began "removing large portions out of [Plaintiff's] meals and adding some type of chemical additives[.]" (*Id.*, PageID.6.) Plaintiff does not provide any further facts to support this conclusory assertion; for example, Plaintiff does not explain how he knows that he was poisoned. Instead, Plaintiff simply states that he has experienced the symptoms described, and because he has experienced these symptoms, without providing any facts to support the conclusion, Plaintiff concludes that he is experiencing these symptoms as a result of "chemical additives" in his food. Plaintiff's allegations are wholly conclusory, and there are no factual allegations to support the conclusion that chemicals are being added to Plaintiff's food. Moreover, by attributing this conduct to Defendant "Hudson, *et al.*,"

8

Plaintiff has failed to identify which Defendants engaged in which specific conduct. *See Boxill*, 935 F.3d at 518; *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."). Under these circumstances, Plaintiff's allegations are insufficient to demonstrate that he is in imminent danger from any of the named Defendants. *See Pettus*, 554 F.3d at 297.

Finally, the symptoms that Plaintiff has allegedly experienced as a result of the "chemical additives" in his food are not considered a "serious physical injury." "A physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). Conversely, "[m]inor harms or fleeting discomfort don't count." *Id*. The Sixth Circuit determined that "[c]hest pains, muscular restlessness, seizures, vomiting, stomach cramps, and dizziness" did not qualify as serious physical injuries for the purposes of this analysis. *Id*. Here, Plaintiff's alleged symptoms fall squarely within the list of conditions that the Sixth Circuit has determined to not be a "serious physical injury." *See id*.

In summary, despite Plaintiff's stated belief that he is "in total fear for [his] life" and that he will not leave segregation "alive or [without] severe physical paralyses and mental damages," Plaintiff's conclusory allegations that his food has been contaminated with chemical additives fails to demonstrate that he is in imminent danger of serious physical injury from the named Defendants. Therefore, for all of the reasons set forth above, he has failed to invoke the exception to the three-strike rule.

9

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis*. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[5]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:      July 30, 2026                         /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge

---

[5] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.